IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE: | * |
| MARYLAND STATE COURT ORDER | |
| DATED NOVEMBER 25, 2024, AND | * |
| SUBPOENAS | |
| | *   Civil No.: 1:24-cv-3699-BAH |
| | * |
| | * |

**MOTION TO QUASH ORDER DATED NOVEMBER 25, 2024 AND THREE SUBPOENAS IN *STATE OF MARYLAND V. CHARLES ROBERT SMITH***

The United States of America, on behalf of the Federal Bureau of Investigation ("FBI"), by and through undersigned counsel, hereby moves to quash: (1) the Order dated November 25, 2024 (the "November 25 Order"), in *State of Maryland v. Charles Robert Smith*, Circuit Court for Anne Arundel County, Maryland, Case No. C-02-CR-23-001080 ("State Case") insofar as it is directed at the FBI; and (2) three subpoenas directed to current or former employees of the FBI pursuant to the November 25 Order which seek trial testimony arising from an ongoing investigation file documented in FBI Case File # 281C-BA-3708548 (the "281C Investigation File"), and in support thereof states as follows:

## I. BACKGROUND

The State of Maryland ("State") is prosecuting Charles Robert Smith ("Mr. Smith") for a mass shooting that occurred in Annapolis, Maryland on June 11, 2023. Three people—Mario Mireles Ruiz ("Mr. Ruiz"), Christian Segovia, and Nicoles Mireles—were killed in the shooting and three others—Rosalina Segovia, Paul Melvin Johnson, III, and Enner Canales Hernandez—were injured. The Anne Arundel County State's Attorney's Office ("SAO") is prosecuting the case and the Office of the Public Defender ("PD's Office") is representing Mr. Smith.

When the mass shooting occurred, the Annapolis Police Department ("APD") requested that the FBI assist with processing the crime scene, which included deployment of the FBI Laboratory Shooting Reconstruction Team. The FBI documented its investigative efforts in FBI Case File #343G-BA-3773068 (the "343G Assist File"). Separately, at the time of, and unrelated to the mass shooting, the FBI and the United States Attorney's Office for the District of Maryland ("USAO-MD") were investigating Mr. Ruiz for potential involvement in drug distribution (the "Investigation"). The Investigation—which is ongoing—is documented by the 281C Investigation File.

For reasons still unclear to the FBI and the USAO-MD, the existence of the Investigation became public, prompting both the SAO and the PD's Office to serve discovery requests on the FBI pursuant to *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) and its related Department of Justice ("DOJ") regulations. *See infra*, Section II.B (discussing *Touhy* regulations). The FBI's responses to these *Touhy* requests germinated into discovery disputes within the State Case, culminating in two orders from the Circuit Court for Anne Arundel County involving the FBI and/or the Investigation, one of which is the November 25 Order. A summary of the various *Touhy* requests and orders is set forth chronologically below.

1. The First SAO *Touhy.*

On January 26, 2024, the SAO sent the FBI a *Touhy* demand seeking the production of portions of the 281C Investigation File, and potentially, the testimony of an FBI Agent or other federal officer, to fulfill the State's disclosure requirements under *Brady v. Maryland*, 373 U.S. 83 (1963). Exhibit 1 (hereinafter, the "First SAO *Touhy*"). The documents requested in the First SAO *Touhy* fell into two categories. *First*, the State requested documents that Mr. Smith's defense attorneys "could use to negate or mitigate guil[t]" in the State Case. *Id.* at 1. This included

documents demonstrating or tending to show that Mr. Ruiz: (1) was a gang member or was known to affiliate with gang members, including the MS-13 gang; (2) engaged in criminal conduct relevant to violence, such as drug distribution; and/or (3) was known to carry a weapon or was believed to be armed at any time during the Investigation. *Id. Second*, the State requested documents tending to show that any of the victims (other than Mr. Ruiz) or witnesses in the State Case were involved in Mr. Ruiz's alleged criminal activity. *Id.* at 1–2. Separately, the State requested testimony of "an FBI agent or federal officer regarding" the Investigation, but offered the caveat that such testimony "would only be needed if the materials cannot be supplied or there is a defense objection to [the State's] disclosure and the State would need to proffer why that is the case or to explain why the materials cannot be released." *Id.* at 1.

On February 12, 2024, the USAO-MD sent a limited *Touhy* authorization letter in response to the First SAO *Touhy*. Exhibit 2. Specifically, the USAO-MD authorized the disclosure of four written reports from the 281C Investigation File that were "redacted as needed to protect the integrity of the investigative file." *Id.* at 1. However, the USAO-MD did not authorize "(1) the production of materials, documents, or information relating to or documenting criminal conduct that occurred after Mr. Ruiz's death, or (2) the testimony of current or former FBI agents in the State's case." *Id.* Moreover, the USAO-MD did not authorize the release of, *inter alia*, any documents or information "that may compromise any ongoing federal criminal investigation (including the Investigation)," the "identity of or information indicating the identity of confidential sources or information," or any "documents regarding investigative techniques, target names, informant names, witnesses, defendants, criminal case numbers, or matters that occurred before a grand jury." *Id.* at 1–2.

3

2. <u>The PD's Office's *Touhy*.</u>

On June 7, 2024, the PD's Office sent the FBI a *Touhy* demand in the State Case seeking the production of documents, and related trial testimony of two FBI agents, regarding any known gang affiliations of the Mireles family and associates, and their alleged intent to finance violence against, and possibly the murder of, Mr. Smith. Exhibit 3 (hereinafter, the "PD's Office's *Touhy*"). The PD's Office's *Touhy* request referenced both the 343G Assist File and the 281C Investigation File.

On July 11, 2024, the USAO-MD sent a limited *Touhy* authorization letter in response to the PD's Office's *Touhy*. Exhibit 4. Subject to the terms and conditions set forth in the authorization letter, the production of the FBI's documents from the 343G Assist File was authorized and those materials were produced. *Id.* However, the production of materials, documents, or information from the 281C Investigation File, as well as the requested trial testimony of FBI agents, was not authorized for the same reasons articulated in the USAO-MD's response to the First SAO *Touhy*. *See id.*

3. <u>The Two Court Orders.</u>

Shortly after the USAO-MD provided the limited authorization in response to the First SAO *Touhy*, the PD's Office filed a Motion to Compel Discovery in the State Case on March 5, 2024. *See* Exhibit 5 (order from State Case dated November 14, 2024). After a hearing on the Motion to Compel on November 12, 2024, the Circuit Court for Anne Arundel County entered an order that day requiring the SAO to, *inter alia*, "provide the Defense with any relationship between the government (including, but not limited to, the State's Attorney's Office, the Annapolis Police Department, and the Federal Bureau of Investigation), including the nature and circumstances of any agreement, understanding, or representation that may constitute an inducement for the

4

cooperation or testimony of the witness." *Id.* However, this order was not directed at the FBI, and instead imposed obligations on the SAO.

Further, on November 25, 2024, the Circuit Court for Anne Arundel County entered the November 25 Order directed, in part, at the FBI. Exhibit 6. The November 25 Order provides, in pertinent part:

> 1. **The Federal Bureau of Investigation** provide any and all information regarding the association, participation and/or membership in MS-13 or any criminal organizations known to operate with MS-13 to the extent not previously provided, including but not limited to FBI cases 343G-BA-3773068 and 281C-BA-3708548, for the following individuals: Mario Mireles Ruiz, Luis Enrique Mireles Ruiz, Christian Marlon Segovia, Jr., Nicolas Mireles, Harcinia Ruiz, Judith Abundez, and others present at the events on June 11, 2023 in the 1000 block of Paddington Place, and;
>
> 2. The testimony at trial of Supervisory Special Agent Autumn Brown and Special Agent Sean O'Rourke, and any other agents or special agents involved in the investigation of the association of the decedents and members of the Mireles family with MS-13 and the hit put out on Charles Robert Smith.

*Id.* (emphasis in original).

4. <u>The Second SAO *Touhy*</u>.

On November 20, 2024, in response to the two orders discussed *supra*, the SAO sent another *Touhy* demand to the FBI (the "Second SAO *Touhy*") requesting a response on two issues:

> 1) Whether there are any relationships, cooperation agreements or inducements of any kind, in any matter, with the FBI and/or the DOJ with any of the witnesses may be called as witness in our State case against the defendant, and if so provide the general nature and circumstances of any agreement.
>
> 2) If the FBI has any information *regarding the association, participation and/or membership in MS-13 or any criminal organizations known to operate with MS-13, including but not limited to FBI cases* 343G-BA-3773068 and 281C-BA-3708548, for the following individuals:
>    1. Mario Mireles Ruiz, Hispanic Male DOB 9/3/95
>    2. Luis Enrique Mireles Ruiz, Hispanic Male DOB 6/11/94
>    3. Christian Marlon Segovia, Jr., Hispanic Male DOB 7/16/98
>    4. Nicolas Mireles DOB 3/25/68, Hispanic Male
>    5. Harcinia Ruiz, Hispanic Female DOB 12/31/64

5

      6. Judith Abundez, Hispanic Female DOB 12/31/96
      7. Or any other persons known to have been present at the events on June 11, 2023 in the 1000 block of Paddington Place Annapolis, MD.

Exhibit 7 (emphasis in original). The SAO noted in the Second SAO *Touhy* that it was "asking for this information so that [it] may satisfy a court order requiring the State exercise due diligence and check with its partners if they [have] information re. gang membership or affiliation [of any witness] or have been induced to cooperate or been given any benefit." *Id.* at 2. In the event the FBI does not have responsive information, the State requested that "a letter in response to [the *Touhy*] stating so is sufficient." *Id.*

On or about December 13, 2024, the FBI communicated to the SAO, by informal email, that "FBI Baltimore is not aware of any agreement, understanding or representation that may constitute an inducement for the cooperation or testimony of a witness with regard to the previously provided list of witnesses in" the State Case. However, given the removal of this case and this Motion, the USAO-MD has not responded, and does not intend to respond, to the portion of the Second SAO *Touhy* seeking information from the Investigation.

     5.     <u>The PD's Office 281C Investigation Subpoenas.</u>

Notwithstanding that the USAO-MD did not authorize the testimony of FBI agents in the limited authorization responding to the PD's Office's *Touhy*, on December 3, 2024, the PD's Office emailed the FBI three subpoenas for the testimony of FBI Supervisory Special Agent Autumn Brown, FBI Special Agent Sean O'Rourke, and FBI Special Agent Michael A. Lipsner, at trial on February 7, 2025 (*i.e.*, the 281C Investigation Subpoenas), pursuant to *Touhy*, 340 U.S. 462, or 49 C.F.R. Part 835. Exhibit 8. The 281C Investigation Subpoenas seek testimony related to the Investigation, and in particular, whether certain witnesses in the State Case "associate" with "MS-13 or any criminal organizations known to operate with MS-13." In other words, the 281C

6

Investigation Subpoenas—relying on the November 25 Order directed to the FBI—seek the disclosure of the same (or very similar) information the FBI has already refused to release in response to the multiple *Touhy* requests lodged by the SAO and the PD's Office.[1]

## II. ARGUMENT

The United States of America moves to quash the November 25 Order because the State Court lacks jurisdiction to compel the FBI to act on the grounds of sovereign immunity. Likewise, the United States of America moves to quash the 281C Investigation Subpoenas on similar sovereign immunity grounds, including the PD's Office's failure to follow the DOJ's *Touhy* regulations. Finally, the United States seeks a Protective Order to prevent further orders against it from the Circuit Court for Anne Arundel County and trial subpoenas from the PD's Office and the SAO in the State Case involving the 218C Investigation File.

### A. The November 25 Order Insofar as it is Directed at the FBI and the 281C Investigation Subpoenas to FBI Agents Must be Quashed.

A state court order compelling a federal official to appear or provide information "is 'an action against the United States, subject to the governmental privilege of sovereign immunity.'" *United States v. Williams*, 170 F.3d 431, 433 (4th Cir. 1999) (quoting *Smith v. Cromer*, 159 F.3d 875, 878 (4th Cir. 1998)); *see also In re Show Cause Order Dated December 15, 2017*, Civ. A. No. TDC-18-0128, 2018 WL 3880289, at *2 (D. Md. Aug. 14, 2018) ("Here, the Show Cause Order seeks to compel the NTSB, a federal agency, to send a federal official to appear in state court for the purpose of divulging information obtained in his or her official capacity. This is an

---

[1] The PD's Office has served 10 additional *Touhy* requests on the FBI seeking trial testimony of FBI Agents and personnel related to the 343G Assist file. The USAO-MD is working on responses to these requests, but as of this writing has not reached a decision as to whether the requested testimony is permitted under DOJ *Touhy* regulations. In addition, the SAO has advised the FBI that it also intends to serve the FBI with up to 29 trial subpoenas for FBI personnel.

7

action against the United States that is barred by sovereign immunity, unless the United States consents."). And, unless the government waives such immunity, the state court lacks jurisdiction to proceed against a federal official. *Williams*, 170 F.3d at 433; *see also In re Show Cause Order Dated December 15, 2017*, 2018 WL 3880289, at *2 ("Where there was no such [waiver of sovereign immunity] in this case, the Maryland Circuit Court lacked jurisdiction to compel the NTSB to appear.").

Like a state court order, "the nature of [a] subpoena proceeding against a federal employee to compel him to testify about information obtained in his official capacity is inherently that of an action against the United States because such a proceeding 'interfere[s] with the public administration' and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function." *See Boron Oil Co. v. Downie*, 873 F.2d 67, 70–71 (4th Cir. 1989) (quoting *Dugan v. Rank*, 372 U.S. 609, 620 (1963)). Therefore, "in the absence of a waiver of sovereign immunity," state court subpoenas issued to federal officials are barred by sovereign immunity. *See id.* at 69; *see also Cromer*, 150 F.3d at 879 ("Where an agency has not waived its immunity to suit, the state court (and the federal court on removal) lacks jurisdiction to proceed against a federal employee acting pursuant to agency direction.").

The Fourth's Circuit's ruling in *Kasi v. Angelone*, 300 F.3d 487 (4th Cir. 2002) is squarely on point and requires a finding that the November 25 Order and 281C Investigation Subpoenas must be quashed. In *Kasi*, defendant Kasi was convicted in state court of murder and other charges arising out of the slaying and shooting of Central Intelligence Agency ("CIA") employees. *Id.* at 490. The FBI participated in the investigation of the murders. *Id.* at 491. Prior to trial, Kasi requested, under *Touhy*, that the state prosecution provide all *Brady* material of which it was aware, and from the FBI, sought production of documents related to the FBI's investigation of the murders

8

and his apprehension. *Id*. at 500. The FBI voluntarily produced some documents to Kasi and made an agent available for questioning by the defense on several occasions, but refused to comply with the subpoenas *duces tecum*. *Id*. at 501. The dispute was brought before the state trial court which refused to issue a contempt order because it determined it had no jurisdiction to hold a federal official in contempt for failing to respond to a state court's subpoena. *Id*.

On appeal to the Fourth Circuit, Kasi claimed that his constitutional right to obtain exculpatory evidence was violated by the trial court's refusal to enforce the subpoena issued to the FBI and the Commonwealth attorney's failure to undertake review of the FBI's file for *Brady* material. *Id*. at 502. The Fourth Circuit rejected these claims. The Court stated that *Brady* "created no general constitutional right to discovery in a criminal case" and "[t]he mere possibility that an item of undisclosed information might have helped the defense ... [did] not establish 'materiality' in the constitutional sense." *Id*. at 504 (quoting *United States v. Agurs*, 427 U.S. 97, 109–110 (1976) (internal quotations omitted)). "Nor does the *Brady* right to obtain exculpatory evidence equate to a right to rummage through governmental files." *Id*. (citation omitted). The Fourth Circuit also found that a state prosecutor has no duty to conduct a *Brady* review of federal agency files. "The FBI files requested by Kasi are in the possession of federal authorities, over whom the Commonwealth has no authority. Thus, the state prosecutor has no more authority to demand that the FBI allow him access to its files so that he can conduct a *Brady* review than the state court has to compel the FBI to allow the state criminal defendant such access." *Id*. at 506 (internal citation omitted). The Court reiterated "that a state criminal defendant who seeks investigative file materials from a federal agency must do so under the applicable agency regulations and that "[t]he proper method for judicial review of the agency's final decision pursuant to its regulations is through the …APA[]." *Id*. "Accordingly, the Administrative Procedure Act provides an

appropriate procedure for judicial review of a decision by a federal agency to withhold investigation materials from a state criminal defendant, in which the state criminal defendant can proffer any perceived rights to the file materials under the constitutional principles set forth in *Brady* and its progeny." *Id*.

Similarly, in *Cromer*, a Maryland state court judge ordered two Assistant United States Attorneys for the District of Maryland and a Special Agent with the Drug Enforcement Administration ("DEA") to produce DEA and USAO case files relating to a criminal defendant's defense in Maryland state court. 159 F.3d at 877. After the case was removed to this Court pursuant to 28 U.S.C. § 1442(a)(1), the Court (Nickerson, J.) "analyzed the competing interests of the parties and weighed Cromer's due process rights to the evidence he sought against the Government's prerogative to resist having its employees subpoena to testify in state court." *Id.* at 878. The Fourth Circuit agreed with this Court's conclusion that Cromer had failed to raise a sufficient "basis to compel the Government to disclose confidential information," particularly where he "had alternative access to the information" and "in light of the policies underlying sovereign immunity." *Id.*

Accordingly, here, because the FBI enjoys immunity from compulsion to produce documents and appear in State Court, and has not waived that immunity, the State Court lacks jurisdiction to order the FBI to appear, and the November 25 Order must be quashed in so far as it relates to the FBI. Moreover, the 281C Investigation Subpoenas—issued to the FBI pursuant to the November 25 Order—should likewise be quashed for the same reason.

By extension, "because 'a federal court's jurisdiction upon removal under 28 U.S.C. § 1441(a)(1) is derivative of the state court jurisdiction,' the federal court can acquire no jurisdiction to enforce a state court subpoena or order upon removal.'" *Williams*, 170 F.3d at 433 (quoting

*Smith*, 159 F.3d at 879); *see also Boron Oil Co.*, 873 F.2d at 70 ("'[J]urisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. Where the state court lacks jurisdiction of the subject matter or the parties, the federal court acquires none . . . .'" (quoting *Minnesota v. United States*, 305 U.S. 382, 389 (1939))); *id.* at 68 (holding that "the state court, and the federal district court on removal, lacked jurisdiction to compel the defendant to appear and testify in a state court action to which the government is not a party"). Therefore, because this case was removed from State Court, and the State Court lacks jurisdiction to compel the FBI to appear and produce documents, this Court derivatively lacks authority to compel the FBI to do so as well.

Additionally, with respect to information relating to ties between MS-13 and witnesses in the State case, any partial disclosure the FBI might be able to make is undercut by the breadth of the Court's November 25 Order and the *Touhy* requests arising therefrom. As noted *supra*, the November 25 Order provides in pertinent part, that the FBI "provide any and all information regarding the <u>association</u>, participation and/or membership in MS-13 or any criminal organizations known to operate with MS-13 . . . for the following individuals: Mario Mireles Ruiz, Luis Enrique Mireles Ruiz, Christian Marlon Segovia, Jr., Nicolas Mireles, Harcinia Ruiz, Judith Abundez, <u>and others present at the events on June 11, 2023 in the 1000 block of Paddington Place</u>." Ex. 6 (underlined emphasis added). Separately, the Order provides that the FBI produce SA Brown and SA O'Rourke, "and <u>any other agents or special agents involved in the investigation of the association</u> of the decedents and members of the Mireles family with MS-13 . . ." *Id*. (underlined emphasis added). The underlined language in the November 25 Order is simply too broad and ambiguous. For this additional reason, the FBI has refused to authorize the disclosure of the requested information regarding MS-13 ties of the witnesses in the State case, and the November 25 Order insofar as it is directed at the FBI should be quashed.

11

## B. The 281C Investigation Subpoenas Should Also Be Quashed Because State Courts Are Bound to Follow the Touhy Regulations Which Have the Force and Effect of Federal Law.

As Judge Nickerson noted in *Cromer*, that state court subpoenas to federal agencies and agents are subject to sovereign immunity does not mean that state court defendants such as Mr. Smith are without recourse to obtain information and records from the federal government. Pursuant to 5 U.S.C. § 301, "commonly known as the 'Housekeeping Statute,' federal agencies are granted authority to prescribe regulations governing the agency, including regulations for 'the custody, use, and preservation of its records, papers, and property." *Williams*, 170 F.3d at 433 (quoting § 301).

In *Touhy*, the Supreme Court "recognized the validity of a Justice Department order . . . which restricted the disclosure of information pursuant to the Housekeeping Statute, noting that 'when one considers the variety of information contained in the files of any government department and the possibilities of harm from unrestricted disclosure in court, the usefulness, indeed the necessity, of centralizing determination as to whether the subpoenas duces tecum will be willingly obeyed or challenged is obvious.'" *Id.* (quoting *Touhy*, 340 U.S. at 468). Thus, the regulations promulgated by federal agencies governing the disclosure of information in state court proceedings to which the government was not a party became known as *Touhy* regulations.

The DOJ's *Touhy* regulations are found at 28 C.F.R. §§ 16.21–29. These regulations "set[] forth procedures to be followed with respect to the production or disclosure of any material contained in the files of the Department [of Justice], any information relating to material contained in the files of the Department, or any information acquired by a person while such person was an employee of the Department as part of the performance of that person's official duties or because of that person's official status: . . . In all federal and state proceedings in which the United States is not a party." 28 C.F.R. § 16.21(a). In turn, employees of the DOJ are prohibited from

12

"disclos[ing] any information or produc[ing] any material acquired as part of the performance of that person's official duties or because of that person's official status without prior approval of the proper Department official in accordance" with the DOJ *Touhy* regulations. *Id.*

The DOJ *Touhy* regulations provide that the appearance and testimony of a present or former DOJ employee, or the production of material from the DOJ, may be authorized, after the issuance of an appropriate demand, if:

(1)   There is no objection, after inquiry, of the originating [federal] component;

(2)   The demanded disclosure, in the judgment of the responsible official, is appropriate under the factors specified in § 16.26(a); and

(3)   None of the factors specified in § 16.26(b) exists with respect to the demanded disclosure.

28 C.F.R. § 16.24(b). The factors under § 16.26(a) include whether "such disclosure is appropriate under the rules of procedures governing the case or matter in which the demand arose" and "is appropriate under the relevant substantive law of privilege." If the request satisfies the § 16.26(a) factors, then the request may be authorized unless any of the factors in § 16.26(b) exist.

Under § 16.26(b), the DOJ *Touhy* regulations prohibit production of information, documents, or testimony if, *inter alia*, "(4) disclosure would reveal a confidential source or information, (5) disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired . . . ."

The United States Attorney for the district from which the request for testimony is made (here, the District of Maryland) is the official within the DOJ that determines whether, and to what extent, testimony by a DOJ employee will be authorized. Here, as discussed, both the SAO and

13

the PD's Office requested the testimony of FBI agents in the State Case pursuant to the DOJ's *Touhy* regulations, and both are therefore familiar with the *Touhy* process. And in each case, the United States Attorney for the USAO-MD refused to authorize the requested testimony of FBI employees regarding the Investigation because the disclosure would reveal a confidential source and/or compromise the ongoing Investigation. Exs. 2 and 4; *see also* 28 C.F.R. § 16.26(b)(4)–(5).

The appropriate mechanism to challenge these *Touhy* denial decisions is a separate action in this Court under the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"). *See COMSAT Corp. v. Nat'l Science Found.*, 190 F.3d 269, 274 (4th Cir. 1999) ("When the government is not a party, the APA provides the sole avenue for review of an agency's refusal to permit its employees to comply with subpoenas."). More simply, the "APA waives sovereign immunity and permits a federal court to order a non-party to comply with a subpoena if the government has refused production in an arbitrary, capricious, or otherwise unlawful manner." *Id.* at 277.

Neither the SAO nor the PD's Office has challenged the United States Attorney's decision, not to authorize testimony of FBI Agents at the trial of the State Case, in an APA action filed in this Court. For this additional reason, the 281C Investigation Subpoenas should be quashed.

### III. CONCLUSION

For the reasons set forth above, the Court should grant this motion and enter an Order: (1) quashing the November 25 Order insofar as it is directed at the FBI; (2) quashing the 281C Investigation Subpoenas issued to FBI Supervisory Special Agent Autumn Brown, FBI Special Agent Sean O'Rourke and FBI Special Agent Michael A. Lipsner in the State Case; (3) protecting the FBI from any further orders against it from the Circuit Court for Anne Arundel County and subpoenas issued to any current or former employee of the FBI involving the 281C Investigation

File; and (4) providing such other relief as the Court deems necessary to prevent further intrusions into the United States sovereign immunity in this case.

        Respectfully submitted,

        Erek L. Barron
        United States Attorney

        /s/
        Michael J. Wilson (Bar No. 18970)
        Vickie E. LeDuc (Bar No.805577)
        Assistant United States Attorneys
        36 South Charles Street, 4th Floor
        Baltimore, Maryland 21201
        (410) 209-4800
        (410) 962-2310 (fax)
        Michael.Wilson4@usdoj.gov
        Vickie.Leduc@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, on this 20th day of December 2024, a copy of the foregoing and all exhibits thereto was served, via U.S. mail, first class, postage prepaid, and via email, on:

| | |
|---|---|
| Anne Bohen Stewart-Hill<br>Denis Andrea O'Connell<br>Office of the Public Defender<br>1700 Margaret Avenue<br>Annapolis, MD 21401 | Anne Colt Leitess<br>Jason Andrew Steinhardt<br>State's Attorney for Anne Arundel County<br>8 Church Circle, Suite 200<br>Annapolis, MD 21401 |
| -and- | *Counsel for Plaintiff in State Case* |
| Felipe Andres Luther Gonzalez Smith<br>Office of the Public Defender<br>251 Rowe Blvd., Room 122<br>Annapolis, MD 21401 | Kathleen Kirchner<br>1116 West St., Suite C<br>Annapolis, MD 21401 |
| *Counsel for Defendant in State Case* | *Victim Representative's Attorney in State Case* |

        /s/
        Michael J. Wilson
        Assistant United States Attorney